**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| ALMONDNET, INC., and<br>INTENT IQ, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ADOBE INC.<br><br>Defendant. | Case No. 7:25-cv-00487-DC-DTG<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiffs AlmondNet, Inc. ("AlmondNet") and Intent IQ, LLC ("Intent IQ") (collectively, "Plaintiffs") make the following allegations against Defendant Adobe Inc. ("Adobe" or "Defendant"):

**INTRODUCTION AND PARTIES**

1. This complaint arises from Defendant's unlawful infringement of United States Patent Nos. 8,959,146 (the "'146 Patent"), 8,677,398 (the "'398 Patent"), and 10,715,878 (the "'878 Patent") (collectively, the "Asserted Patents"), which generally relate to novel internet / network based advertising systems and methods. AlmondNet owns the '146 patent and holds all rights to enforce it. Intent IQ owns the '398 patent and '878 patent and holds all rights to enforce them.

2. AlmondNet, Inc. is a corporation organized and existing under the laws of the state of Delaware, having its place of business at 37-18 Northern Blvd. Suite 404, Long Island City, NY, 11101. Intent IQ, LLC is a Delaware limited liability company, having its place of business

at 37-18 Northern Blvd. Suite 404, Long Island City, NY, 11101. AlmondNet, Inc. and Intent IQ, LLC, are collectively referred herein as the "Plaintiffs."

3. Founded in 1998, AlmondNet and its affiliates have developed an extensive suite of industry-leading targeted advertising solutions and products. AlmondNet is focused on R&D and the licensing of its extensive portfolio of enabling technology and intellectual property covering numerous areas of the targeting landscape and ecosystem, including profile-based bidding, behavioral targeting, online and offline data monetization, addressable advertising, and multi-platform advertising.

4. Intent IQ is a leading company in the field of cross-device-based ad targeting, retargeting, audience extension, and attribution. Intent IQ's "Dynamic Device Map" identifies a given user across multiple device types, including laptops, desktops, smartphones, tablets, and televisions, so as to assist advertisers in delivering targeted ads to consumers on all of their screens. Intent IQ can facilitate ad targeting based on profile data aggregated from activity on any of a user's screens, as well as measure the impact of previously delivered ads on the same or different screen.

5. On information and belief, Defendant is a Delaware corporation with a principal place of business at 345 Park Avenue San Jose, California 95110 and a regular and established place of business located at 11501 Domain Drive, Suite 110 Austin, Texas 78758. Defendant may be served with process through its registered agent, the Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

**JURISDICTION AND VENUE**

6. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over Defendant in this action because Defendant is incorporated under the laws of the state of Delaware and has a place of business in this at 11501 Domain Drive, Suite 110 Austin, Texas 78758. Defendant has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continue to commit acts of infringement in this District by, among other things, offering to sell and selling products and services that infringe the Asserted Patents.

8. Venue is proper in this District because Defendant has a regular and established place of business in this District and has committed acts of infringement within this District.

## ADOBE'S ACCUSED INSTRUMENTALITIES

9. As used herein, "Adobe's Accused Instrumentalities" or "Accused Instrumentalities" includes without limitation Adobe's Audience Manager, Experience Platform, and Adobe Demand Side Platform, including but not limited to components such as Bidder Service, Ads Data, User Key-Value storage, Pacing System, ML models, Bidder pods, Telephone, Streamers, Basic Filtering, Advance Filtering, ML Evaluation, Ranking & Selection, Tracking Pixels, Bidding Optimization, Bid Shading, Placement Optimization, Adobe Experience Platform identity graph, Identity Services, Device Graphs, Adobe Sensei, and Co-op Graph.

10. Adobe describes the Adobe Experience Platform as able to "ingest all your customer data — unknown and known — and stitch it together with unparalleled governance and

intelligence to create a real-time customer profile. Then, activate that profile in real time to meet your customer data platform (CDP) needs and deliver personalized experiences across every touch point." https://business.adobe.com/products/experience-platform/customer-data-platform.html#.

11. Adobe describes Audience Manager as helping customers "bring your audience data assets together, making it easy to collect commercially relevant information about site visitors, create marketable segments, and serve targeted advertising and content to the right audience. Furthermore, Audience Manager offers easy tag deployment and management with robust data collection, control, and protection.... With access to multiple data sources, Audience Manager offers digital publishers the ability to use a wide variety of third-party data." https://experienceleague.adobe.com/en/docs/audience-manager/user-guide/overview/aam-overview.

12. Finally, Adobe describes its Demand-Side Platform (DSP) as one that "centralizes purchasing and optimizes digital advertising inventory across various channels, formats, and publishers, from display and video to Connected TV (CTV). It unifies advertising tech with marketing tech, providing a more consistent user experience across every touchpoint." https://business.adobe.com/products/advertising/demand-side-platform.html.

13. According to Defendant's website: these products are integrated together and designed to be integrated together by Adobe under Adobe's direction and control, to enhance the capabilities of the product offerings and share data and information. https://experienceleague.adobe.com/en/docs/audience-manager/user-guide/implementation-integration-guides/integration-experience-platform/aam-aep-audience-sharing#.

The audience sharing functionality between Audience Manager and Adobe Experience Platform allows you to share your Audience Manager traits and segments to Adobe Experience Platform and Experience Platform segments to Audience Manager.

You need the Audience Manager source connector and the Experience Cloud Audiences destination in Experience Platform to enable audience sharing between Audience Manager and Adobe Experience Platform.

You can use Audience Manager traits and segments in Experience Platform to add Audience Manager data to your customer profiles and to benefit from the Experience Platform segmentation service.

In Audience Manager, you can use Experience Platform segments for Data Management Platform use cases, such as:

- Add third party data to your segments;
- Algorithmic modeling;
- Activate your segments to destinations that are not yet supported in the Experience Platform destinations catalog.

Additionally, your Experience Platform segments are shared to other Experience Cloud solutions, via Core Services.

*Id.*




https://experienceleague.adobe.com/en/docs/audience-manager-learn/tutorials/other-integrations/integrating-with-ad-cloud/advertising-cloud-and-audience-manager-integration#.

14. Adobe's website further describes the features of its Demand-Side Platform as being "all powered by Adobe Experience Platform and AI." https://business.adobe.com/products/advertising/demand-side-platform.html.

**COUNT I**

**INFRINGEMENT OF U.S. PATENT NO. 8,959,146**

15. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

16. U.S. Patent No. 8,959,146, titled "media properties selection method and system based on expected profit from profile-based ad delivery," issued on February 17, 2015 ("the '146 patent"). A true and correct copy of the '146 patent is attached as Exhibit 1.

17. On information and belief, Defendant makes, uses, offers for sale, and/or sells the Accused Instrumentalities (Adobe's Demand-Side Platform (DSP) and related components, including but not limited to components such as Bidder Service, Ads Data, User Key-Value storage, Pacing System, ML models, Bidder pods, Telephone, Streamers, Basic Filtering, Advance Filtering, ML Evaluation, Ranking & Selection, Tracking Pixels, Bidding Optimization, Bid Shading, and Placement Optimization) that directly infringes, literally and/or under the doctrine of equivalents, one or more method claims of the '146 patent.

18. Adobe, through the Accused Instrumentalities, performs all claim limitations of one or more method claims of the '146 patent. A claim chart comparing independent method claim 1 of the '146 patent to Adobe's infringing activity is attached as Exhibit 2, which is hereby incorporated by reference in its entirety.

19. By making, using, offering for sale, and/or selling into the United States the Accused Instrumentalities, Defendant has injured Plaintiffs and is liable for infringement of the '146 patent pursuant to 35 U.S.C. § 271.

20. As a result of Defendant's infringement of the '146 patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

21. Plaintiffs are entitled to past damages for Defendant's infringement of the '146 patent. 35 U.S.C. § 287 does not apply to this case because Plaintiffs have only asserted method claims of the '146 patent.

22. Defendant's infringing activities have injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction prohibiting further infringement of the '146 patent, and, specifically, enjoining further manufacture, use, sale, and/or offers for sale that come within the scope of the patent claims.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 8,677,398

23. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

24. U.S. Patent No. 8,677,398, titled "systems and methods for taking action with respect to one network-connected device based on activity on another device connected to the same network," issued on March 18, 2014. A true and correct copy of the '398 patent is attached as Exhibit 3.

25. On information and belief, Defendant makes, uses, offers for sale, and/or sells the Accused Instrumentalities (the Adobe Experience Platform, Adobe Audience Manager, and related components including but not limited to components such as the Adobe Experience Platform identity graph, Identity Services, Device Graphs, Adobe Sensei, and Co-op Graph) that directly infringes, literally and/or under the doctrine of equivalents, one or more method claims of the '398 patent.

26. Adobe, through the Accused Instrumentalities, performs all claim limitations of one or more method claims of the '398 patent. A claim chart comparing independent method claim 13

of the ’398 patent to Adobe’s infringing activity is attached as Exhibit 4, which is hereby incorporated by reference in its entirety.

27. By making, using, offering for sale, and/or selling into the United States the Accused Instrumentalities, Defendant has injured Plaintiffs and is liable for infringement of the ’398 patent pursuant to 35 U.S.C. § 271.

28. As a result of Defendant’s infringement of the ’398 patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant’s infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

29. Plaintiffs are entitled to past damages for Defendant’s infringement of the ’398 patent. 35 U.S.C. § 287 does not apply to this case because Plaintiffs have only asserted method claims of the ’398 patent.

30. Defendant’s infringing activities have injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction prohibiting further infringement of the ’398 patent, and, specifically, enjoining further manufacture, use, sale, and/or offers for sale that come within the scope of the patent claims.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 10,715,878

31. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

32. U.S. Patent No. 10,715,878, titled “targeted advertisements based on online behavior,” issued on July 14, 2020. A true and correct copy of the ’878 patent is attached as Exhibit 5.

33. On information and belief, Defendant makes, uses, offers for sale, and/or sells the Accused Instrumentalities (the Adobe Experience Platform and related components including but not limited to components such as the Adobe Experience Platform identity graph, Identity Services, Device Graphs, Adobe Sensei, and Co-op Graph) that directly infringes, literally and/or under the doctrine of equivalents, one or more method claims of the ’878 patent.

34. Adobe, through the Accused Instrumentalities, performs all claim limitations of one or more method claims of the ’878 patent. A claim chart comparing independent method claim 1 of the ’878 patent to Adobe’s infringing activity is attached as Exhibit 6, which is hereby incorporated by reference in its entirety.

35. By making, using, offering for sale, and/or selling into the United States the Accused Instrumentalities, Defendant has injured Plaintiffs and is liable for infringement of the ’878 patent pursuant to 35 U.S.C. § 271.

36. As a result of Defendant’s infringement of the ’878 patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant’s infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

37. Plaintiffs are entitled to past damages for Defendant’s infringement of the ’878 patent. 35 U.S.C. § 287 does not apply to this case because Plaintiffs have only asserted method claims of the ’878 patent.

38. Defendant’s infringing activities have injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction prohibiting further infringement of the ’878 patent, and, specifically, enjoining further manufacture, use, sale, and/or offers for sale that come within the scope of the patent claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a. A judgment in favor of Plaintiffs that Defendant has infringed the Asserted Patents, either literally and/or under the doctrine of equivalents;

b. A permanent injunction prohibiting Defendant from further acts of infringement of the Asserted Patents;

c. A judgment and order requiring Defendant to pay Plaintiffs their damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the Asserted Patents;

d. A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to Plaintiffs, including without limitation, pre-judgment and post-judgment interest;

e. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiffs its reasonable attorneys' fees against Defendant; and

f. Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

Dated: January 7, 2026

Respectfully submitted,

*/s/ Reza Mirzaie*

Reza Mirzaie
CA State Bar No. 246953
Marc A. Fenster
CA State Bar No. 181067
Brian D. Ledahl
CA State Bar No. 186579
Adam S. Hoffman
CA State Bar No. 218470
James A. Milkey
CA State Bar No. 281283
Philip X. Wang
CA State Bar No. 262239
Susan Y. Tull
D.C. Bar No. 992644
James Tsuei
CA State Bar No. 285530
Jonathan Ma
CA State Bar No. 312773
Joshua M. Scheufler
TX State Bar No. 24123406
Daniel B. Kolko
CA State Bar No. 341680
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Tel: 310-826-7474
Fax: 310-826-6991
rmirzaie@raklaw.com
mfenster@raklaw.com
bledahl@raklaw.com
ahoffman@raklaw.com
jmilkey@raklaw.com
pwang@raklaw.com
stull@raklaw.com
jtsuei@raklaw.com
jma@raklaw.com
jscheufler@raklaw.com
dkolko@raklaw.com

*Attorneys for Plaintiffs*
*AlmondNet, Inc. and Intent IQ, LLC*